**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

| | |
|---|---|
| **TYRONE ROGERS  AND TINA M. ROGERS  )** | **CIVIL ACTION NO.** |
| **Plaintiff                                    )** | |
| **                                                   )** | |
| **v.                                               )** | |
| **                                                   )** | |
| **BARBERINO BROTHERS, INC.          )** | **TRIAL BY JURY DEMANDED** |
| **Defendant                              )** | |
| _____ **)** | **SEPTEMBER 22, 2017** |

## <u>COMPLAINT</u>

### I.     INTRODUCTION

1.      This is a suit brought by two consumers under the Equal Credit Opportunity Act, 15 U.S.C. § 1690 *et seq.* ("ECOA"), the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 *et seq.,* the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.,* the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42a-110a *et seq.*, the Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-785, and Article 9 of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. § 42a-9-101 *et seq.* against Barberino Brothers, Inc. Plaintiffs bring this action to recover actual damages, statutory damages,  punitive damages, and reasonable attorney's fees and costs.

### II.     PARTIES

2.      Tyrone Rogers and Tina M. Rogers are a married couple residing in Bristol, Connecticut.

3.      Barberino is a Connecticut stock corporation with a business address in Wallingford, Connecticut, and it is a new car dealership and an authorized dealer for Nissan motor vehicles.

## III.    JURISDICTION

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Fed. R. Civ. P. 18(a).

5.      This Court has jurisdiction over Barberino because it is a Connecticut corporation that regularly conducts business in this state.

6.      Venue in this Court is proper, because the parties are located in Connecticut and the transaction occurred in this state.

## IV.    FACTUAL ALLEGATIONS

### A. Allegations Regarding 2016 Nissan Rogue

7.      On or about November 11, 2014, Plaintiffs purchased a 2014 Nissan Sentra (the "Sentra") from Barberino that was financed pursuant to a retail installment sales contract that was assigned by Barberino to Nissan Motor Acceptance Corporation ("NMAC") a sales finance company.

8.      In February 2017, Plaintiffs received a flyer from NMAC informing them that they were preapproved to trade-in the Sentra towards the purchase of a new 2017 Nissan Rogue and that their payments would be $500+/month.

9.      Plaintiffs desired to purchase a 2017 Nissan Rogue for their personal, family and household use pursuant to this promoted offer, and they went to Barberino in order to do so.

10.     Plaintiffs met with Charles Smith, a salesman, and Hugo Louriero, a Barberino manager, and one of them took the promotional flyer.

11.     Barberino took credit information from Plaintiffs and informed them that the contract for the purchase of a Nissan Rogue would have to be put into Tyrone Rogers name only.

12.

13.     Barberino also informed Plaintiffs that the only vehicle that Tyrone Rogers could be approved to purchase was a left-over 2016 Nissan Rogue (the "Rogue").

14.     Prior to the time that the Plaintiffs saw the Rogue, someone had removed the Monroney (new car) sticker from the vehicle's window.

15.     The manufacturer's suggested retail price ("MSRP") for the Rogue, including all optional equipment and delivery charges, was $26,055.

16.     Nissan Rogues generally are available to purchase by the public from Nissan dealers at a price substantially less than the MSRP.

17.     Additionally, the Rogue, as a leftover 2016 that had 148 miles on the odometer, had a fair retail value for substantially less than MSRP.

18.     Barberino steered the Plaintiffs, who are black, to the Rogue, because it has a lesser value than the new 2017 Nissan Rogues, which Plaintiffs preferred to purchase.

19.     Barberino prepared contract documents to sell the Rogue to Tyrone Rogers for a cash price for $27,263.22.

20.     Plaintiffs did not know the MSRP of the Rogue, because the new car sticker was not displayed on the window.

21.     The purchase was financed by a retail installment sales contract, which stated that Plaintiffs made a cash payment of $0.52, even though no cash payment was requested or paid.

22.     The purchase order and retail installment sales contract contained a charge of $1,399 for a service contract, even though Plaintiffs did not desire a service contract and were not aware that it had been included.

23.     The purchase order and retail installment contract also included a charge of $1,095 for a GAP Addendum.

24.     Tyrone Rogers noticed the inclusion of the GAP charge and asked about it, and he was told that the charge was for credit life insurance.

25.     Plaintiffs would not have agreed to the GAP charge if Barberino had not misrepresented the nature of the charge, because they had comparable coverage through their own insurance company.

**B. Allegations Regarding 2014 Ford Explorer**

26.     At the same time that Plaintiffs came to Barberino to purchase a new Nissan Rogue, they also desired to trade a Nissan Armada that they owned for a newer SUV for their personal, family, and household use.

27.     Plaintiffs selected a used 2014 Ford Explorer (the "Explorer) from Barberino's inventory.

28.     On information and belief, Barberino prepared a retail installment contract for both Plaintiffs to purchase the Explorer, and it took possession of the Armada as a trade and delivered the Explorer to Plaintiffs.

29.     Barberino did not provide contract documents for the Explorer to the Plaintiffs and did not provide them with the disclosures required under TILA.

30.     Subsequent to the delivery of the Explorer, Barberino contacted Plaintiffs and informed them that, if they wanted to keep the Explorer, Tyrone Roger's father would need to sign new contract documents.

31.     Plaintiffs did not want Tyrone Roger to be an owner or to become indebted for the Explorer, and they refused.

32.     Subsequently, Barberino retook possession of the Explorer after threatening to have Plaintiffs arrested if they did not return the vehicle.

## V.    CAUSES OF ACTION

### ECOA: ROGUE PURCHASE

32.     Plaintiffs, who are black, are members of a protected class under ECOA.

33.     On account of their race and their perceived vulnerability to predatory sales practices, Barberino steered Plaintiffs towards the Rogue and told them Tyrone Rogers could be approved for financing for only that vehicle.

34.     Barberino discouraged Plaintiffs from applying for credit for other vehicles and imposed less favorable terms on Tyrone Rogers than would have been available to someone not in his status.

35.     Barberino also refused to extend credit to Tina Rogers for this transaction, and it failed to provide her with a notice of adverse action as required by ECOA.

36.     Barberino is liable to Tyrone Rogers for actual damages, punitive damages up to $10,000, attorney's fees, and costs.

37.    Barberino is liable to Tina Rogers for punitive damages of up to $10,000, attorney's fees, and costs.

**TILA:  ROGUE PURCHASE**

38.    Barberino violated TILA by including a false $0.52 cash down payment, resulting in an inaccurate itemization of the amount financed.

39.    Barberino is liable to Tyrone Rogers for damages plus a reasonable attorney's fee.

**CUTPA: ROGUE PURCHASE**

40.    The foregoing acts constitute violations of CUTPA.

41.    Tyrone Rogers has suffered an ascertainable loss under CUTPA, because he paid more for the Rogue than its reasonable retail value. Additionally, he was required to take a hold-over vehicle. As of the date of this Complaint, the Rogue has a book trade-in value of approximately $17,000 (NADA, September 2017 Eastern Edition: $15,800 base for 2016 Rogue S AWD plus $1,200 adjustment for 14,000 miles). A 2017 model with the same mileage would have a book trade-in value of $17,850. Additionally, he became liable for the cost of the service contract and GAP.

42.    Tina Rogers also suffered an ascertainable loss, because the Rogue was purchased as a family vehicle, and Plaintiffs share household expenses.

43.    Barberino is liable to Plaintiffs for their damages, punitive damages, and a reasonable attorney's fee.

**TILA: Explorer Purchase**

44.    Barberino violated TILA by its failure to provide to Plaintiffs the disclosures required by that Act.

45.     The finance charge on the retail installment sales contract executed by Plaintiffs was more than $1,000.

46.     Barberino is liable to Plaintiffs for double the finance charge up to $2,000 plus a reasonable attorney's fee.

**RISFA: Explorer Purchase**

47.     Barberino repossessed the Explorer without providing Plaintiffs with any of the notices required by Conn. Gen. Stat. § 36a-785.

48.     Barberino is liable to Plaintiffs for their damages.

**UCC:   Explorer Purchase**

49.     Barberino repossessed the Explorer without providing Plaintiffs with any of the notices required by Part 6 of Article 9 of the UCC.

50.     Barberino is liable to Plaintiffs for damages of ten percent of the amount financed plus the finance charge under the retail installment contract.

**CUTPA: Explorer Purchase**

51.     The foregoing acts constitute violation of CUTPA.

52.     Plaintiffs have suffered an ascertainable loss under CUTPA, because they have been deprived of the ownership and use of the Explorer.

53.     Barberino is liable to Plaintiffs for their damages, punitive damages, and a reasonable attorney's fee.

Wherefore, Plaintiffs seek actual damages, statutory damages under TILA and the UCC, punitive damages under CUTPA and ECOA, and a reasonable attorney's fee and costs.

PLAINTIFFS, TYRONE ROGERS AND TINA ROGERS

By: /s/ *Daniel S. Blinn*
Daniel S. Blinn (ct02188)
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com